UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


DILBERT "IVAN" CALIX                        CIVIL ACTION


VERSUS                                      NO: 06-1645


GLOBAL INTERNATIONAL MARINE,                SECTION: "J" (4)
INC. AND SITRALMARH


**ORDER AND REASONS**

Before the Court is defendant Global International Marine,

Inc.'s ("Global's") Motion to Dismiss Pursuant to Rule 12(b)(3).

(Rec. Doc. 13.) The motion is opposed. Having considered the

record, the memoranda of counsel, and the applicable law, the

Court finds that the motion should be DENIED.

**BACKGROUND**

Plaintiff, Dilbert "Ivan" Calix Chacon("Calix"), is a

Honduran citizen. Defendant, Global, is a corporation organized

under the laws of the State of Louisiana with its principal place

of business in Houma, Louisiana. Calix was hired by Defendant,

Sitralmarh, a Honduran crewing agency, to work for Global as a

seaman and crew member aboard the M/V SAMSON. The M/V SAMSON is an American flagged vessel that was bound for work in the Caribbean Sea.  Calix was flown to the United States to join the vessel, which was located in a dry dock near Houma receiving repairs.

While aboard the M/V SAMSON, Calix developed severe abdominal pain and was taken to a hospital in Houma. There Calix had his gall bladder surgically removed. Following this surgery he demonstrated evidence of congestive heart failure. He was diagnosed with cardiomegaly, or an enlarged heart. The treating physician determined that the condition will be fatal if Calix does not receive a heart transplant. Global indicated that it would not pay for a heart transplant. Calix then sued Global under general maritime law, solely for maintenance and cure.

Calix's employment contract contains a "Choice of Law, Forum Selection" provision which specifies that all terms of the employment contract are governed by Honduran law and that any dispute arising out of the employment contract must be brought exclusively in a court of competent jurisdiction in Honduras. The contract does not contain an arbitration clause. The contract is written in English. Calix does not speak English proficiently, but he apparently had the contract explained to him in Spanish by a Sitralmarh employee. Calix initialed the contract beside the

forum selection provision. Global seeks to have the case dismissed based upon the forum selection clause.

## DISCUSSION

### A.    *Legal Standard*

Federal Rule of Civil Procedure 12(b)(3) has been recognized by the Fifth Circuit as a proper vehicle for seeking enforcement of a forum selection clause. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005). Because the case was brought in federal court, federal enforceability standards apply, rather than state standards. *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997). Because the alterative venue is a foreign court, the federal common law of *forum non conveniens* applies, rather than the transfer standards of 28 U.S.C. § 1404(a). *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 833-34 (5th Cir. 1993). In an international maritime case such as this one, *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), controls the *forum non conveniens* analysis concerning a forum selection clause. *See Brock v. Baskin-Robbins USA Co.*, 113 F.Supp. 2d 1078, 1083 n.1 (E.D.Tex. 2000).

In *Bremen* the Supreme Court held that maritime forum-selection clauses are presumed valid and should be enforced unless enforcement is unreasonable under the circumstances. 407 U.S. at 10. The Fifth Circuit applies this presumption to a

maritime employment contract. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998). A forum selection clause may be unreasonable when: (1) the incorporation of the clause into the agreement was a product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) the enforcement of the clause would contravene a strong public policy of the forum state. 407 U.S. at 10. This last rationale, that "[a] contractual choice-of-forum clause should be held unenforceable if the enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," 407 U.S. at 15, controls this case. The strong public policy preventing contractual abridgment of maintenance and cure liability, as expressed in the federal common law of admiralty and in the Shipowners' Liability (Sick and Injured Seamen) Convention of 1936 ("Convention") prohibit the enforcement of the forum selection clause at issue in this case.[1]

---

[1] The Court notes that the State of Louisiana also has a strong public policy prohibiting forum selection clauses in employment contracts, as expressed in LA R.S. 23:921(A)(2) and the Louisiana Supreme Court case *Sawicki v. K/S STAVANGER PRINCE*, 802 So. 2d 598, 2001-0528 (La. 12/7/01).

B.    *Arguments of the Parties*

Global argues that the numerous cases where forum selection clauses have been held effective for international maritime claims sounding in both contract and in tort dictate that the provision in Calix's contract be enforced. Global argues that to hold otherwise would foster uncertainty in the international context owing to the variety of potential fora.

Calix counters that none of the cases cited involve a claim for maintenance and cure made against an American shipowner of an American flagged vessel. Calix argues that the special status of seamen as wards of the court should lead this Court to require Global to pay maintenance and cure despite the forum selection clause.

C.    *Application of the Law to this Case*

"Maintenance and cure is not the only recourse of the injured seaman....But maintenance and cure is more certain if more limited in its benefits." *Farrel v. U.S.*, 336 U.S. 511, 519 (1949). The Shipowners' Liability (Sick and Injured Seamen) Convention of 1936 is an international treaty designed to ensure that certainty. The Convention was ratified by the United States Senate in 1938 and proclaimed effective by the President as of October 29, 1939. *Id.* at 517; Oct. 29, 1939, 54 Stat. 1693-1704. The Convention codified the pre-existing federal common law of

American maintenance and cure as binding international law for
those who ratified it. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5-6
(1975) (quoting *Warren v. United States*, 340 U.S. 523, 527
(1951)).

Article 1 dictates to whom the Convention applies. It
states: "This Convention applies to all persons employed on board
any vessel, other than a ship of war, registered in a territory
for which this Convention is in force and ordinarily engaged in
maritime navigation." The "U.S. Understandings" section at the
end of the version ratified by the United States further
clarifies Article 1 by stating "[t]hat the United States
Government understands and construes the words 'vessels
registered in a territory' appearing in this Convention to
include all vessels of the United States as defined under the
laws of the United States. That the United States Government
understands and construes the words 'maritime navigation'
appearing in this Convention to mean navigation on the high seas
only." The M/V SAMSON is a vessel of the United States,
ordinarily working in the Caribbean Sea, so the terms of the
Convention apply to it.

The phrase "all persons employed on board any vessel" is
broad enough on its face to cover Mr. Calix. In addition, Article
11 further clarifies that "[t]his Convention and national laws or

regulations relating to benefits under this Convention shall be
so interpreted and enforced as to ensure equality of treatment to
all seamen irrespective of nationality, domicile, or race." As
with Global, Mr. Calix falls squarely within the terms of the
Convention. Thus, the Convention controls the parties and the
claim before the Court.

Article 2 of the Convention specifies the defenses that will
be allowed to a claim for maintenance and cure. These are: injury
incurred otherwise than in the service of the ship; injury or
sickness due to the willful act, default or misbehaviour of the
claimant; and sickness or infirmity intentionally concealed when
the engagement is entered into.[2]

The Convention does not provide for a defense that the
shipowner and the seaman have entered a contract that prohibits
claims for maintenance and cure from being brought in U.S.
Courts.[3] Indeed, it is generally understood that maintenance and
cure is "a duty that no private agreement is competent to

_____

[2] Although Congress has never expressly enacted these
exceptions, general maritime law gives them effect without the
need for an Act of Congress. *Warren v. United States*, 340 U.S.
523, 526 (1951).

[3] Honduras has not ratified the Convention, such that
dismissing this claim to allow suit in Honduras under Honduran
law would frustrate the intentions of the United States that the
Convention apply to all persons employed on all American maritime
vessels. See http://www.ilo.org/ilolex for the list of nations
that have ratified the Convention.

abrogate." *De Zon v. American President Lines*, 318 U.S. 660, 667 (1943). To the contrary, Article 12 does provide that: "Nothing in this Convention shall affect any law, award, custom or agreement between shipowners and seamen which ensures ***more favourable*** conditions than those provided by this Convention" (emphasis added). By clear implication, a law or an agreement between shipowners and seamen which seeks to ensure less favorable conditions than those the Convention provides violates the Convention. The Convention ensures by express statute what the federal common law has long held, that American vessel owners cannot contract out of liability for maintenance and cure. Thus the certainty that should characterize maintenance and cure, *see Farrel,* 336 U.S. at 519, and that Global correctly notes is an important consideration in international contracts, *see*, *Marinechance*, 143 F.3d at 220, is provided by the clear requirements of the Convention and the federal common law.

## CONCLUSION

The Shipowners' Liability Convention is an explicit expression of a strong policy of the United States. The forum selection clause in the employment contract between Global and Calix directly contravenes this policy as it relates to the claim in this suit. Therefore, under *Bremen*, the clause "should be held unenforceable." Global bases its Motion to Dismiss solely upon

the force of the forum selection clause. Therefore, the motion must fail.

Because it appears that Calix's medical condition is extremely serious and potentially life threatening if he does not receive treatment, the Court intends to conduct an expedited trial on maintenance and cure.

Accordingly,

**IT IS ORDERED** that defendant Global International Marine, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(3) (Rec. Doc. 13) is **DENIED.**

**IT IS FURTHER ORDERED** a telephone status conference will be held on Monday, May 1, 2006 at 10:00 a.m. for the purpose of selecting an expedited trial date.

New Orleans, Louisiana this the 27th day of April, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE